Sereno E. Bishop and Mrs. C. C. Armstrong *vs.* Chas. H. Judd, Assessor of Taxes for Honolulu, 1877.

#### SUBMISSION OF CASE WITHOUT SUIT.

These cases were submitted under the statute. The plaintiff, Bishop, owed a mortgage on his real estate in Honolulu, and was also the owner of $5,000 stock in a corporation whose entire property is on Maui, and is there assessed.

The plaintiff, Armstrong, is the owner of a mortgage and note on real estate in Honolulu.

S. E. Bishop and Mrs. C. C. Armstrong *v.* C. H. Judd, Assessor, 1877.

The defendant assessed the plaintiff, Bishop, the full value of his real estate without deducting the amount of the mortgage, and assessed him also on his stock in said corporation.

The defendant further assessed the plaintiff, Armstrong, on her note and mortgage as personalty and also assessed at its full value the real estate covered by said note and mortgage.

The Court was required to direct the Assessor in his election, as to which assessment is proper in each case. The Court held that it had no power to do so and dismissed the cases.

Opinion of the Court by McCully, J.

The above title embodies two separate submissions argued by the same counsel at the same time, respectively as follows:

"1.   The plaintiff, Bishop, is the owner of real estate in the District of Honolulu, which estate is subject to mortgage for $650 to Mrs. L. B. Coan.

"2.   The plaintiff is also the holder of three shares in the capital stock of the 'Haiku Plantation,' a corporation carrying on business at Haiku, in the Island of Maui, the value of such shares, for the purposes of this case, being taken to be $5,000.

"3.   The plaintiff has made a return to the defendant as such Tax Assessor, and claims to be entitled to deduct from his taxable real or personal estate the amount of the said mortgage as a debt owing by him.

"4.   The plaintiff also claims that he is not liable to be assessed and pay taxes upon the value of his shares in the 'Haiku Plantation,' inasmuch that the capital stock of the Company is assessed and liable to taxation in the district where such Company carries on business.

"5.   The defendant, on the contrary, insists that he is entitled to assess, and has assessed the plaintiff the full value of his said real estate, and refuses to allow the plaintiff to deduct from the value of the said real estate the amount of the said mortgage debt; and also insists that he is entitled to assess, and has assessed the plaintiff for the full value of his shares in the 'Haiku Plantation,' as personal property in the District of Honolulu, where the plaintiff resides.

"6. The questions submitted to the said Justices are: 1. Whether the plaintiff is entitled to deduct from the value of his property, real or personal, the said mortgage debt. 2. Whether the plaintiff is chargeable with taxes upon his said shares of stock in the Haiku Plantation.

"Judgment to be entered for the plaintiff or defendant according to the decision of the Court upon these issues."

"1. The plaintiff (Armstrong) has loaned the sum of $850 to the estate of Kailiuli, and has taken a mortgage over certain real estate situated at Honolulu, together with a promissory note as security, which real estate is assessed, independent of the mortgage, in the district where situate.

"2. Pursuant to the requirements of the law, the plaintiff has made a return to the defendant, as such Tax Assessor as aforesaid, whereby, after stating the value of her personal property, she claims to deduct therefrom the amount due on the said note and mortgage.

"3. The defendant, on the contrary, insists that under the existing law, he is entitled to assess, and has assessed the plaintiff with the said debt as being a debt secured by a promissory note.

"The question for the opinion of the Justices is: Whether the plaintiff is properly assessed for the amount of the said mortgage debt, the property being already assessed in the district where situate."

Before proceeding to consider the issues thus submitted we think it proper to express our doubts whether such cases come within the purview of the statute of submissions. That statute provides for the submission to the Justices of the Supreme Court on agreed statement of a question of difference which might become the subject of a civil action in the Supreme Court. But it is not manifest what civil action could be brought against the Assessor of Taxes. A special remedy, which is exclusive (see Widemann vs. Minister of Finance, 3d Haw. Rep. p. 789), by appeal to the Tax Appeal Board, has

been provided for parties who have been wrongly assessed. These plaintiffs do not resort to that remedy, because they do not claim that the Assessor's valuation has been too high, nor that he has not followed the law in its apparent meaning. They come to the Supreme Court with the argument that the tax law is unconstitutional, a matter which could not be raised before the Tax Board, nor be brought from the Board to the Court, no appeal therefrom being provided.

If the Assessor is a judicial officer, and acted judicially and with jurisdiction over the persons and property of the plaintiffs, then as held in Swift vs. City of Poughkeepsie, N. Y., 37 Court of Appeals, 511, he is entitled to the protection accorded to all tribunals and parties thus acting. We are aware that there are authorities supporting the contrary doctrine, the Courts of many of the States of the United States permitting actions possibly similar to this.

The Court here is only asked to find whether the plaintiffs are chargeable according to the assessment, there being no claim of injury sustained to which the defendant should respond in damages, and the result of a finding for the plaintiffs we are given to understand would be an amendment of the assessment. But taking this into consideration and the further view that the term "civil action" includes legal and equitable proceedings, so that the judgment of the Court might have the effect of mandamus or injunction, we are not prepared to hold that the questions here in difference could so be brought before the Court. It might become a precedent for using this method of litigation to obtain the findings of the Court on questions of difference from which it was anticipated that parties might hereafter suffer damage, and lead to making the Court an office of consultation.

But one of the parties in these cases is the Government, in the name of the Assessor, for whom the Attorney General appears officially. We have a provision of the Constitution that the Government may require the opinion of the Court upon

important matters of law, and it has been intimated to us by the Attorney General, that if we felt unable to take jurisdiction of these submissions, the Cabinet would call for our opinion on the same issues. We, therefore, waive in this instance our doubts as to jurisdiction.

We first consider the two questions, whether the holder of real estate may deduct from its assessed value the amount of a mortgage thereon, and whether the mortgagee shall be assessed for the amount of his mortgage.

The language of the statute that "real estate is to be assessed in the district where situated, irrespective of any mortgage," is so explicit that no attempt was made to show any other possible construction of the law than the obvious one. The statute as to personal property is that "*All personal* property of whatever kind not subject to specific taxes or specially exempted from taxation, shall be" taxed, and that the term "personal property should be construed to include all * * money, notes of hand, * * and every species of property not included in real estate." The amendment of 1876 struck out the words "in hand and money loaned, all mortgages," and inserted in their place "notes of hand, unsecured debts, growing crops," and further amended the provisions as to real estate that "it should be assessed its full cash value irrespective of any mortgage." From this some argument was offered that the intention of the Legislature was to exempt mortgages from taxation and transfer the tax to real estate. To concede this view we must hold that a mortgage is real estate, for every species of property not included in real estate, and not specially exempt or subject to specific tax, is to be taxed as "personal property," or we must hold that a mortgage is not property at all. The latter view is maintained by some speculative writers, but, without discussion of the theory, we say that we hold a secured solvent debt to be property; and if property it is included in the description of personal property, and to be assessed unless

exempted. It requires a more distinct expression to exclude it than anything we find in the statute. It would rather appear to us that in striking out the phrase "moneys in hand and moneys loaned, and mortgages," and retaining the items "all moneys and notes of hand," it was intended to include by general description money loaned on note and secured by mortgage, in like manner with money either in hand or loaned, with or without note, and whether secured by mortgage or not.

In respect to the third point, that the holder of stock in an incorporated plantation should not be taxed, it was assumed that the plantation property, real and personal, were fully assessed in the district where situated; and for the purpose of the argument we may take it to be so. "Stocks in corporations" are to be taxed as being personal property by the terms of law, and equally explicit is it that the plantation, its land, building, machinery, cattle, horses and implements are to be taxed in the district where situated.

Thus each of the three items of property in question is made taxable by the terms of the statute, as was mainly conceded by counsel for the plaintiffs.

The constitutional provision which is claimed to be infringed by the law, is a part of the 14th Article: "Each member of society has a right to be protected by it (Government) in the enjoyment of life, liberty and property, and therefore shall be obliged to contribute his proportional share to the expense of this protection." It is claimed that this prohibits disproportional or double taxation, and that the operation of the law is to impose double taxes by taxing mortgages and the real estate, stock and the plantation. When it is claimed that the plaintiff, who holds the mortgage, has charged the borrower a rate of interest higher by the amount of the taxes she must pay for her mortgage, and that so the mortgagor pays a tax once on that part of his property which is involved in the mortgage, and again in the shape of enhanced interest, we fail to see

that he has paid a double tax.   The Constitution does not shield the person who is obliged to borrow from burdens which may fall upon him through the operation of the laws of the money market.   And on the other hand the plaintiff paying the one general rate on her money, cannot plead that she suffers an unconstitutional wrong from the fact that the other party also pays a tax.   The allegation that the borrower does pay the lender's taxes in the higher rate of interest demanded is an inference only.   It does not appear that if mortgage loans be exempt from taxation they will be placed at a rate lower by the amount of the tax.   This circumstance *inter alia* might be considered, but the controlling circumstances are supply and demand, the market value of the security, and the character and necessities of the borrower.   The rate of interest in this Kingdom has fallen from 15 per cent. to 9 during the years the tax has risen from nothing up to three-fourths of one per cent.

It is to be remarked that the expression in our Constitution is, not that all property shall be taxed *equally,* as is the provision in the Constitutions of some of the States to whose authorities we are cited, but in substance this, that in consideration of the protection accorded to life, liberty and property, *every person* shall pay his *proportional* share of the expense of Government.   Now if a mortgage is property, and if it is protected by law, we cannot see wherein it contravenes the Constitution that the holder of it should pay taxes on it at the common rate of assessment.

It is well settled as sound doctrine that before Courts will exercise the high power of declaring a statute unconstitutional and so set aside the will of the supreme law-making power, it must appear that such Act is clearly in contravention of the fundamental law.   The New York Court of Appeals, in a case reported in the Albany Law Journal of September 22d, 1877, "Gilbert Elevated R. R. Company," use this language with regard to constitutional construction:   Every presumption is

in favor of the constitutionality of Acts of the Legislature. An adverse doubtful construction is not sufficient to condemn an Act; it is only in cases of a clear and substantial departure from the provisions of the fundamental law that Courts will declare Acts of the Legislature invalid ; 55 N. Y., 50; 53 *Ib.*, 553; 14 Mass., 340; 17 N. Y., 235; 23 Wend., 166. It will not be sufficient to show that the operation of the tax on mortgages is to raise the rate of interest to mortgages. Such may be the effect, but that hardship, if it exists, unless it is clearly prohibited under the Constitution, must be endured until the Legislature relieve it. It is said that the mortgagor is not the owner of the estate, having only the equity of redemption. This, his legal status, is not what an assessment law regards, and, practically, it is a fiction of law. The owner remains in possession and treats it as his own in every respect. He has availed himself of his property as a means of credit for a loan, and has legally assured to the lender that in the event of failure to pay, that certain piece of property shall be sold at public auction for his benefit, exclusive of the claims of other creditors. The mortgagee may purchase it, but only by being the highest bidder, and he cannot be said to take or hold it by the conveyance included in the mortgage. For the purpose then of the assessment and tax laws, a mortgage is treated as a note which is secured, equally liable to taxation with notes unsecured, and real estate is treated without reference to the credit obtained upon it. The owner of the money and the owner of the land must each pay the proportional and uniform assessment on his property in this Kingdom.

As to taxing stocks in corporations, we first meet with the difficulty that there is an inequality between the tax imposed on incorporated and non-incorporated property of the same description, the second being taxed only *in rem*, the first in that and also in the several shares which represent the same thing and the right to the revenue to be derived. It is to be ob-

S. E. Bishop and Mrs. C. C. Armstrong *v.* C. H. Judd, Assessor, 1877.

served here that the law in this respect stands now in the same words as it has since 1859, when a property tax was first imposed—the amendment of 1876 not affecting this item.   We believe that every incorporation existing in the Kingdom has been made since then and in view of this provision, so that it should not seem a matter of complaint if parties have voluntarily placed their property in this form.   The fact of the law having stood so many years without challenge gives a presumption in favor of its constitutionality, besides the general presumption that way in favor of statutes.

We must regard the creation of stock as in a certain sense the creation of new taxable property.   In the case of a plantation it may well be that the aggregated values of the acres of land, the buildings, machinery, cattle and implements, as rated by the assessor of the district, will not represent the property value of the organization represented by the stock. The stock of established plantations has now a value as an investment greatly in excess of the value of the several items forming the visible plantation.   It may be said further that the value of stock is estimated in view of the fact that the plantation tax is subtracted before dividends are made.

Perhaps a perfectly equal assessment will require a new statute provision for deducting from the value of the shares the value of all property, real or personal, which is taxed directly to the corporation.   We have been cited to the Massachusetts Statute for an instance of such legislation.   But as the case stands, can it be said that the holder of a share of stock which is valued at $5,000 in the market, because after payment of taxes by the plantation among other expenses it yields a net profit on such valuation, should not pay the Government his proportional share, his tax on the property he owns?   Nor do we see why it should be more unconstitutional to tax the stock, when the plantation is also taxed than to tax the plantation if the stock is taxed.   The Court is required to direct the assessor in his election whether he shall hold the

one or the other; likewise in mortgages, whether he shall deduct the mortgage from the assessment of the real estate, or shall omit to assess the mortgage. This seems to us to be beyond the province of the Court.

The subjects involved in the three questions submitted have given rise to profound legal discussion and judicial opinions, without a final and uniform settlement of the difficulties involved, and that, too, where the statutes of assessment and constitutional provisions have been much more full and explicit than our own. There are two, systems of taxation; either one of which may be adopted as the theory of a consistent series of statutes. One, of taxation *in rem*, where every species of visible property is taxed in full, and no other. Under this, debts of every kind, whether presented by notes, mortgages or accounts, and all intangible property, such as stock, are not assessed. The other is the system of taxation *in personam*, wherein every person is taxed for all the property he owns, his visible and real personal estate, less his debts thereon, his notes, mortgages and stock.

We do not understand that our statute is consistent with either system.

The Court cannot undertake in this proceeding to remedy or relieve the apparent injustice which tax payers may suffer by the statutes on taxation. The Legislature is the tribunal to which such grievances must be addressed. We do not find the statutes to be unconstitutional.

Judgment for the defendant.

Attorney General Hartwell for the defendant.

Messrs. Davidson, Castle and Preston for plaintiffs.

Honolulu, October 23d, 1877.